Paul R. Norman (pro hac vice pending)
BOARDMAN, SUHR, CURRY & FIELD, LLP
One South Pinckney St., 4th Floor
P. O. Box 927
Madison, WI 53701-0927
Tel: (608) 257-9521
Fax: (608) 283-1709

*Attorneys for Boucher Imports, Inc., Braeger Chrysler Jeep, Inc., Chilson, Inc., Quaden Motors, Inc., Johnson Motors of St. Croix Falls, Inc., Lakeland Pontiac-GMC-Jeep, Inc., Mueller Chrysler, Inc., and Wolf's Motor Car Company, Inc. ("Wisconsin Dealers")*

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

In re

Old CarCo LLC
(f/k/a Chrysler LLC), et al.,

                   Debtors.

Dist. Ct. Case No. 09-CV-8875-CM

Chapter 11
Bankr. Case No. 09-50002 (AJG)
(Jointly Administered)

-------------------------------------------------------- x

## APPELLANT WISCONSIN DEALERS BRIEF IN SUPPORT OF
## THEIR APPEAL OF THE BANKRUPTCY COURT'S ENFORCEMENT ORDER

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

PROCEDURAL BACKGROUND RELEVANT TO APPEAL........................2

STANDARD OF REVIEW ................................................................................4

ARGUMENT ......................................................................................................4

    A.    The Bankruptcy Court Exceeded Its Jurisdiction in
    Its Enforcement Order ..............................................................................4

    B.    The Sale Order Does Not Bar the Wisconsin Actions
    Against New Chrysler................................................................................5

        1.    Wisconsin State Claims Are Not "Claims"
        as They Do Not Satisfy § 363(f) ................................................7

        2.    Wisconsin State Claims Do Not Fall Within
        "claims" as Defined in § 101(5) ..................................................13

        3.    No Successor Liability Exists (As No Claim
        Existed Against Old Chrysler)....................................................17

    C.    Rejection Order Does Not Bar Wisconsin Actions
    Against New Chrysler................................................................................19

    D.    If Orders Construed to Bar Wisconsin Actions,
    Due Process Would Be Violated ..............................................................23

CONCLUSION ..................................................................................................25

CERTIFICATE OF SERVICE..........................................................................27

# TABLE OF AUTHORITIES

## Cases

*Bank of Marin v. England*, 385 U.S. 99 (1966)...................................................................24

*DeWest Realty Corp. v. IRS*, 418 F. Supp. 1274 (S.D.N.Y. 1976)...................................17

*Fogel v. Zell*, 221 F.3d 955 (7th Cir. 2000) .....................................................................24

*Folger Adam Security, Inc. v. Dematteis/MacGregor, JV*,
    209 F.3d 252 (3d Cir. 2000)..........................................................................................24

*Garcia v. Yonkers School District*, 561 F.3d 97 (2d Cir. 2009).........................................4

*In re Alvie Stanley Linkous*, 990 F.2d 160 (4th Cir. 1993) ..............................................24

*In re Auto-Train Corp.*, 810 F.2d 270 (D.C. Cir. 1987) ...................................................24

*In re Barton Industries, Inc.*, 104 F.3d 1241 (10th Cir. 1997)........................................24

*In re Chateaugay Corp.*, 944 F.2d 997 (2d Cir. 1991) .............................................14, 15

*In re Chrysler LLC (Indiana State Police Pension Trust Fund)*,
    576 F.3d 108 (2d Cir. 2009).................................................................................4, 5, 12

*In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687 (Bankr. S.D.N.Y. 1992).......20

*In re Friarton Estates Corp.*, 65 B.R. 586 (Bankr. S.D.N.Y. 1986) ...............................23

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990)................................................4

*In re Lavigne*, 114 F.3d 379 (2d Cir. 1997) ........................................................19, 20, 23

*In re Leckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir. 1996).........................................12

*In re Sterling Optical Corp.*, 371 B.R. 680 (Bankr. S.D.N.Y. 2007)..............................20

*In re Stoltz*, 315 F.3d 80 (2d Cir. 2002)......................................................................20, 23

*In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003) .......................................11

*In re Udell*, 18 F.3d 403 (7th Cir. 1994)..........................................................................16

## **Cases**

*In re Yasin*, 179 B.R. 43 (Bankr. S.D.N.Y. 1995)............................................................20

*LTV Steel Co. v. Shalala*, 53 F.3d 478 (2d Cir. 1995) ..............................................14, 15

*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306 (1950) ......................................23, 24

*Pension Benefits Guar. v. Oneida*, 562 F.3d 154 (2d Cir. 2009) ..............................14, 15

*Precision Indus., Inc. v. Qualitech Steel Corp.*, 327 F.3d 537 (7th Cir. 2003)................11

*R.C.M. Executive Gallery Corp. v. Rols Capital Co.*,
 901 F. Supp. 630 (S.D.N.Y. 1995) ..........................................................................18

*Travelers Cas. & Sur. Co. v. Pacific Gas & Elec. Co.*, 549 U.S. 443 (2007)..................15

*Travelers Indemnity Co. v. Bailey*, — U.S. —, 129 S.Ct. 2195,
 174 L.Ed 99 (Mar. 30, 2009)................................................................................5, 23

*Worldcom v. MCI*, 546 F.3d 211 (2d Cir. 2008) ............................................................14

## **Statutes**

11 U.S.C. § 101 ...................................................... 1, 5, 6, 7, 13, 14, 15, 16, 17
11 U.S.C. § 363 ...........................................................................................*passim*
11 U.S.C. § 365 ..............................................................................................20
26 U.S.C. § 6901 ............................................................................................17
Wis. Stat. § 218.0114............................................... 2, 3, 10, 11, 12, 15, 16
Wis. Stat. § 218.0116..........................................2, 3, 9, 10, 11, 12, 15, 16, 17, 18, 20, 22

## **Other**

Black's Law Dictionary (6th ed. 1990) ........................................................18
Colliers on Bankruptcy (15th ed. 2009)....................................................9,10
Norton Bankr. L. & Prac. 3d ........................................................................19

# INTRODUCTION

The Appellants (collectively the "Wisconsin Dealers") asserted state law claims against New Chrysler in Wisconsin state court for violating the Wisconsin Motor Vehicle Dealer Act. These state law claims stem from New Chrysler's refusal to continue their franchises as required by operation of Wisconsin law and the appeal relates to New Chrysler's attempt to avoid its state law obligations. Specifically, the Wisconsin Dealers appeal the Enforcement Order entered by the U.S. Bankruptcy Court for the Southern District of New York, which held that the Sale Order and Rejection Order (which were issued earlier as part of the Old Chrysler bankruptcy) barred the Wisconsin state law claims asserted against New Chrysler by the Wisconsin Dealers.

In issuing its Enforcement Order, the bankruptcy court exceeded its subject matter jurisdiction as it went beyond merely interpreting the Sale Order and Rejection Order and, instead, broadened the terms of those orders. This is improper and, as such, the bankruptcy court lacked jurisdiction to enter the Enforcement Order. The bankruptcy court erred as a matter of law in a number of ways: (a) by holding that the Sale Order permitted the sale of assets free and clear of those Wisconsin state law claims, even if those claims did not satisfy 11 U.S.C. § 363(f) as required by the terms of the Sale Order; (b) by holding that the Sale Order did not require "claims" to meet the definition of 11 U.S.C. § 101(5) as required by the terms of the Sale Order; (c) by holding that the Wisconsin state law claims against New Chrysler were successor liability claims even though the Wisconsin Dealers could never have asserted these claims against Old Chrysler; and (d) by holding that the Rejection Order was in "direct conflict" with the Wisconsin statutes at issue (and, thus, preempted) even

though the Rejection Order pertained only to Old Chrysler while the Wisconsin statutes at issue pertain only to New Chrysler.

Finally, even if the bankruptcy court had the jurisdiction to broaden the terms of the Sale Order and Rejection Order in its Enforcement Order, allowing it to do so unilaterally after-the-fact would violate procedural and substantive due process.  Simply put, the plain language of the Sale Order and the Rejection Order did not bar the Wisconsin Dealers from asserting their Wisconsin state law claims against New Chrysler.


## PROCEDURAL BACKGROUND RELEVANT TO APPEAL

The debtors in the bankruptcy action were Old CarCo LLC et al. (also referred to as "Old Chrysler").  After Old Chrysler went into bankruptcy (and after it received its Sale Order and Rejection Order), New Chrysler LLC (the entity that purchased Old Chrysler's assets) applied for and received a manufacturer's and distributor's license in Wisconsin under the Wisconsin Motor Vehicle Dealer Law. Norman Aff., Bankr. dkt. #5250, at Exh. A.

As a result of applying for a Wisconsin license, New Chrysler became subject to the provisions of the Wisconsin MVDL by operation of law.   Wis. Stat. § 218.0114(2m) ("obtaining of a license . . . shall subject the licensee to all provisions of the Wisconsin statutes regulating manufacturers, importers and distributors").  Specifically, New Chrysler became subject to the following particular Wisconsin MVDL provision:

> If there is a change in a manufacturer, importer or distributor, a motor vehicle dealer's franchise granted by the former manufacturer, importer or distributor shall continue in full force and operation under the new manufacturer, import or distributor unless a mutual agreement of cancellation is filed with the department of transportation between the manufacturer, importer or distributor and the dealer.

Wis. Stat. § 218.0116(1)(i)2.

The Wisconsin Dealers commenced a state court and an administrative action against New Chrysler (the "Wisconsin Actions"), asserting that New Chrysler violated Wis. Stat. § 218.0116(1)(i)2 by failing to continue the franchises of Old Chrysler. The state court action sought against New Chrysler injunctive relief from discontinuing the dealer franchises and a declaratory judgment that the Wisconsin Dealers have a right to continue these franchises until they are discontinued in accordance with Wisconsin franchise law. The administrative action against New Chrysler was filed under Wis. Stat. § 218.0114(7)(d), which allows for an administrative determination as to the issue of continuation pursuant to Wis. Stat. § 218.0116(1)(i)2.

New Chrysler then removed both actions to the U.S. District Court for the Western District of Wisconsin and the Wisconsin Dealers moved for remand (the Wisconsin Dealers later withdrew both actions as a result of the bankruptcy court's directive in its Enforcement Order, Bankr. dkt. #5372, which is the order that gives rise to this appeal).

In addition to removing the Wisconsin Actions to federal court in Wisconsin, Old Chrysler and New Chrysler jointly sought relief from the Wisconsin Actions in the U.S. Bankruptcy Court for the Southern District of New York, asserting that the state actions violated the Sale Order (Bankr. dkt. #3232) and Rejection Order (Bankr. dkt. #3802) that were issued during the Old Chrysler bankruptcy. The bankruptcy court agreed, holding that the Sale Order barred the Wisconsin Actions because "the Claims [in the Sale Order] include any rights the Dealers may have against New Chrysler under state laws" and "the Wisconsin Civil Action and the Wisconsin Administrative Action are essentially successor/transferee liability claims." Enforcement Order, Bankr. dkt. #5372, at 5-6. The bankruptcy court also held that the Wisconsin state law claims were successor liability claims in "direct conflict"

with the Rejection Order, which preempted Wisconsin franchise law. Enforcement Order at 7-8. The bankruptcy court held that "the Dealers are seeking to burden New Chrysler with the obligation of either continuing previously rejected dealer agreements or suffering other unfavorable consequences of the rejected dealer agreements" and that the Rejection Order "ended the Dealers' right to act as authorized dealers while the [state] statutes resurrect precisely those rights and compel New Chrysler, the successor/transferee of Debtors, to resume the dealer agreements." Id. at 8.

## STANDARD OF REVIEW

A district court reviews a bankruptcy court's conclusions of law under a de novo standard of review and its findings of fact for abuse of discretion. In re Ionosphere Clubs, Inc., 922 F.2d 984, 988 (2d Cir. 1990). This standard of review remains the same when the district court reviews a bankruptcy court's interpretation of its own order. See Garcia v. Yonkers School District, 561 F.3d 97, 103 (2d Cir. 2009).

## ARGUMENT

### A. The Bankruptcy Court Exceeded Its Jurisdiction in Its Enforcement Order

The bankruptcy court did not have subject matter jurisdiction to issue the Enforcement Order because, in doing so, it broadened the terms of both the Sale Order and the Rejection Order. The Enforcement Order also went beyond the scope of the bankruptcy code and, as the Second Circuit held in a different appeal of the Old Chrysler bankruptcy (not involving the Wisconsin Dealers), the Sale Order was constrained by the bankruptcy code. In re Chrysler LLC (Indiana State Police Pension Trust Fund), 576 F.3d 108, 127 (2d

Cir. 2009) ("<u>Indiana Pensioners</u>") ("We affirm this aspect of the bankruptcy court's decision [the Sale Order] insofar as it constituted a valid exercise of authority under the Bankruptcy Code.").

It is true that a bankruptcy court has jurisdiction to interpret and enforce its own prior orders, however, the bankruptcy court erred as a matter of law in this case by looking beyond and broadening the terms of the Sale Order and Rejection Order through its Enforcement Order. <u>See</u> <u>Travelers Indemnity Co. v. Bailey</u>, — U.S. —, 129 S.Ct. 2195, 2203, 2205, 174 L.Ed 99 (Mar. 30, 2009) ("The Court of Appeals, however, believed it was free to look beyond the terms of the 1986 Order . . . . This, we think, was error."). In <u>Travelers</u>, the Supreme Court held that "where the plain terms of a court order unambiguously apply . . . they are entitled to their effect." <u>Id.</u> at 2204. As to the Sale Order and Rejection Order at issue in this case, the Wisconsin Dealers are entitled to the effect of the terms of these orders and those terms are that "Claims" that are passed "free and clear" will have satisfied 11 U.S.C. § 363(f) and that any "claims" sold "free and clear" will have met the definition of a "claim" under 11 U.S.C. § 101(5).

As explained in more detail below, the bankruptcy court went beyond the terms of the Sale Order and Rejection Order and, therefore, it lacked subject matter jurisdiction to issue the Enforcement Order, which barred the Wisconsin state law claims asserted against New Chrysler in the Wisconsin Actions.

## B. The Sale Order Does Not Bar the Wisconsin Actions Against New Chrysler

The bankruptcy court described "Claims" in the opening pages of the Sale Order that were allowed to be sold "free and clear" pursuant to 11 U.S.C. § 363(f), as follows:

> pursuant to sections 105, <u>363</u> and 365 of the Bankruptcy Code . . . (ii)
> authorizing and approving the sale by the Debtors of the Purchased Assets,
> <u>free and clear of</u> liens, <u>claims (as such term is defined by section 101(5) of
> the Bankruptcy Code),</u> liabilities, encumbrances, rights, remedies, restrictions
> and interests and encumbrances of any kind or nature whatsoever whether
> arising before or after the Petition Date, whether at law or in equity,
> <u>including all claims or rights based on any successor or transferee liability,</u>
> all environmental claims, all change in control provisions, all rights to object
> or consent to the effectiveness of the transfer of the Purchased Assets to the
> Purchaser or to be excused from accepting performance by the Purchaser or
> performing for the benefit of the Purchaser under any Assumed Agreement
> and all rights at law or in equity (<u>collectively, "Claims"</u>).

Sale Order, Bankr. dkt. #3232, at 2-3 (emphasis added). The Sale Order also provided that

Old Chrysler could sell its assets "free and clear of all Claims" because, in each instance in

which a Claim was not an Assumed Liability, at least one of the five standards set forth in

§ 363(f) had been satisfied. The exact language is as follows:

> The Debtors may sell the Purchased Assets <u>free and clear of all Claims
> because, in each case where a Claim is not an Assumed Liability, one or
> more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy
> Code have been satisfied.</u>

Sale Order at 17, ¶ W (emphasis added); <u>see also</u> Sale Order at 26, ¶ 9 ("<u>Pursuant to sections</u>

105(a) and <u>363(f)</u> . . . Purchased Assets shall be transferred to the Purchaser, and . . . such

transfer . . . <u>shall be free and clear of all Claims</u> except for Assumed Liabilities . . . .")

(emphasis added).

The bankruptcy court held in its Enforcement Order that the Sale Order barred the

Wisconsin Actions asserted by the Wisconsin Dealers against New Chrysler as those claims

were "essentially successor/transferee liability claims." Enforcement Order, Bankr. dkt.

#5372, at 6; <u>see also</u> <u>id.</u> at 4-6 ("The Sale Order enjoined Dealers from pursuing any

successor/transferee liabilities against New Chrysler"; "the Wisconsin Civil Action and the

Wisconsin Administrative Action are essentially successor/transferee liability claims").

However, the bankruptcy court erred as a matter of law because the state law claims in the Wisconsin Actions: (1) do not fall within the "Claims" that were sold free and clear pursuant to § 363(f); (2) do not fall within the definition of "claims" under § 101(5); and (3) are not successor/transferee liability claims, as the Wisconsin Dealers could *never* have asserted these state law claims against Old Chrysler. Each of these errors is discussed below.

### 1. Wisconsin State Claims Are Not "Claims" as They Do Not Satisfy § 363(f)

In the opening pages of the Sale Order, the bankruptcy court described those "Claims" that were sold "free and clear" pursuant to § 363(f). Sale Order at 2-3. Moreover, in Paragraph W of the Sale Order, the bankruptcy court reiterated that Old Chrysler could sell its assets "free and clear of all Claims" because, in each instance in which a Claim is not an Assumed Liability, at least one of the five standards in 11 U.S.C. § 363(f) has been satisfied, as follows:

> The Debtors may sell the Purchased Assets free and clear of all Claims because, in each case where a Claim is not an Assumed Liability, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.

Sale Order at 17, ¶ W. This section of the Sale Order was even entitled, "Section 363(f) Requirements Met for Free and Clear Sale." Id. In yet another section of the Sale Order, the bankruptcy court provided that "[p]ursuant to sections 105(a) and 363(f) of the Bankruptcy Code" the transfer of purchased assets "shall be free and clear of all Claims except for Assumed Liabilities." Sale Order at 26, ¶ 9. The bankruptcy court even made the § 363(f) point clear in its Enforcement Order, noting that it had "entered the Sale Order authorizing the sale of substantially all of the Debtors' assets pursuant to 11 U.S.C. § 363." Enforcement Order at 4.

Given the plain language of the Sale Order and the bankruptcy court's own stance as to § 363(f) in its Enforcement Order, it is evident that the Old Chrysler assets sold "free and clear of all Claims" under the Sale Order were only those "Claims" that satisfied § 363(f). Id. Therefore, because the state law claims in the Wisconsin Actions do not fall within § 363(f), the Wisconsin Actions do not violate the Sale Order. As a result, the Wisconsin Dealers had no reason to appeal the Sale Order.

Section 363(f) provides as follows:

The trustee may sell property under subsection (b) and (c) of this section free and clear of any interest in such property of an entity other than the estate, only if —

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding to accept money satisfaction of such interest.

11 U.S.C. § 363(f).

In order to fall within § 363(f), the state law claims that the Wisconsin Dealers asserted against New Chrysler in the Wisconsin actions must be *both* an "interest" in Old Chrysler's property *and* satisfy at least one of the five factors under § 363(f). Id. Neither criteria has been met. As to the five factors, a debtor may sell free and clear of an interest "only if" one of the five factors has been satisfied. In this case, none has been satisfied.

**Section 363(f)(1)** – This provision allows for a free and clear sale when the "applicable nonbankruptcy law permits sale of such property free and clear of such interest." This provision is not satisfied because the applicable non-bankruptcy law, Wis. Stat.

§ 218.0116(1)(i)2), obligates all new manufacturers to continue the franchises granted by their predecessor regardless of the circumstances under which they become the new manufacturer.

Section 363(f)(2) – This provision allows for a free and clear sale when the holder of a lien or interest "consents" to such a sale. This provision is not satisfied because the Wisconsin Dealers have not consented to New Chrysler's refusal to continue their franchises.

Section 363(f)(3) – This provision allows for a free and clear sale when "such interest is a lien [and the sale prices is greater than the aggregate value of all liens on such property]." This provision is not satisfied because the Wisconsin Dealers are not asserting any lien against New Chrysler.

Section 363(f)(4) – This provision allows for a free and clear sale when "such interest is in bona fide dispute." To meet this factor, the debtor "must establish that there is an objective basis for either a factual or legal dispute as to the validity of the debt." 3 Colliers at § 363-47[5] (collecting cases). This provision is not satisfied because Wis. Stat. § 218.0116(1)(i)2 is unambiguous in obligating New Chrysler to continue the franchises and leaves no room for a bona fide dispute with regard to that obligation.

Section 363(f)(5) – This provision allows for a free and clear sale when "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." This provision is not satisfied because the Wisconsin Dealers cannot be compelled to accept a money satisfaction of New Chrysler's obligation to continue their franchises. The Wisconsin law at issue, Wis. Stat. § 218.0116(1)(i)2, statutorily obligates New Chrysler to continue the franchises in full force and operation, and other provisions of the Wisconsin MVDL entitle the Wisconsin Dealers to an automatic injunction against canceling or

discontinuing the franchises unless canceled or discontinued in accordance with state law. See Wis. Stat. § 218.0114(7)(d) ("Agreements and certificates of appointment shall continue in effect until final determination of the issues raised in the complaint."); Wis. Stat. § 218.0116(10) (giving Wisconsin Division of Hearings and Appeals authority to issue special orders enjoining any licensee from violating any provision of Wis. Stat. § 218.0116(1)). The Wisconsin Dealers filed a complaint under Wis. Stat. § 218.0114(7)(d) with the Wisconsin Division of Hearings and Appeals and the Wisconsin Department of Transportation, which automatically entitles the Wisconsin Dealers to continue their franchises unless or until there is a final ruling by the Division that the cancellation or discontinuation of those franchises complies with the requirements set forth in Wis. Stat. § 218.0116(1)(i)2. Because the Wisconsin Dealers cannot be compelled to accept a money satisfaction of New Chrysler's obligations to continue their franchises, their state law claims do not satisfy § 363(f)(5).

In addition to failing to meet any of the five factors of § 363(f), the Wisconsin state law claims at issue are not an "interest" under § 363(f). To sell assets free and clear of something under § 363(f), that something must be an "interest" in the debtor's property. 11 U.S.C. § 363(f) (debtor "may sell property . . . free and clear of any interest in such property"); see also 3 Colliers on Bankruptcy § 363.06 (15th ed. 2009) (bankruptcy court "may not authorize a sale free and clear of property that is not property of the estate"). In other words, a sale is not free and clear of anything that is not an "interest" in the debtor's estate. Id. In this case, the Wisconsin state law claims in the Wisconsin Actions are not an "interest" against Old Chrysler's estate.

The bankruptcy code does not define the concept of "interest" and, as a result, courts consider its plain meaning. For example, the Seventh Circuit approved the definition of

"interest" from Black's Law Dictionary, which defines it as "'[a] legal share in something; all or part of a legal or equitable claim to or right in property.'" Precision Indus., Inc. v. Qualitech Steel Corp., 327 F.3d 537, 545 (7th Cir. 2003). The state law claims asserted against New Chrysler Wisconsin Actions sought to enforce its obligation under Wis. Stat. § 218.0116(1)(i)2 to continue the franchises of the former distributor. This is not an "interest" under § 363(f) as these state law claims are based on a statutory obligation imposed automatically on New Chrysler by virtue of its acceptance of a license to distribute its motor vehicles in Wisconsin. As such, they are not rooted in any interest that the Wisconsin Dealers had in any property transferred by Old Chrysler to New Chrysler.

In the first appeal arising from the Old Chrysler bankruptcy (not involving the Wisconsin Dealers), the Second Circuit discussed the meaning of an "interest" under § 363(f). In re Chrysler LLC (Indiana State Police Pension Trust), 576 F.3d 108 (2d Cir. 2009) ("Indiana Pensioners"). In the Indiana Pensioners appeal, the debate over the meaning of an "interest" related to product liability claims that had been asserted against New Chrysler for defects in vehicles made by Old Chrysler. Id. at 124. The Second Circuit held that "any interest in property" under § 363(f) "encompasses those claims that 'arise from the property being sold.'" Id. at 126 (quoting In re Trans World Airlines, Inc., 322 F.3d 283, 290 (3d Cir. 2003)). The Second Circuit went on to hold that, "[b]ecause appellants' claims arose from Old Chrysler's property, § 363(f) permitted the bankruptcy court to authorized the Sale free and clear of appellants' interest in the property." Id. at 126.

In this case, the Wisconsin state law claims asserted against New Chrysler do not arise from Old Chrysler's property being sold. See Wis. Stat. § 218.0116(1)(i)2. To the contrary, these state law claims arise *only* from a statutory obligation triggered by New

Chrysler's licensing in Wisconsin.  Id.; see also Wis. Stat. § 218.0114(2m).  Indeed, no claim

against Old Chrysler ever existed under these state statutes.  Id.  The state law claims are

independent claims directly against New Chrysler, not derivative claims that could have been

brought against Old Chrysler.  As such, the state claims are not an "interest" under § 363(f).

Unlike product liability claims in Indiana Pensioners, no claim under Wis. Stat.

§ 218.0116(1)(i)2 ever existed against Old Chrysler that could "succeed" to New Chrysler.

Successor liability statutes make a purchaser of assets liable for claims that could have been

asserted against the debtor and, therefore, they are deemed claims against the debtor's

property under § 363(f), which, in turn, makes them dischargeable in the bankruptcy.

Indiana Pensioners at 124-26; see also In re Leckie Smokeless Coal Co., 99 F.3d 573, 582

(4th Cir. 1996).  Unlike successor liability claims, the state law claims at issue in the

Wisconsin Actions do not arise from Old Chrysler's conduct or property, cannot be satisfied

by a monetary award against Old Chrysler and were not discharged in Old Chrysler's

bankruptcy proceeding.  Accordingly, the Wisconsin Actions asserted against New Chrysler

are not an "interest" under § 363(f) and, as a result, were not sold free and clear under the

Sale Order.

In sum, the Wisconsin state law claims asserted by the Wisconsin Dealers against

New Chrysler in the Wisconsin Actions are not an "interest" under § 363(f) and, even if they

were an "interest," none of the five factors in § 363(f) has been satisfied.  Accordingly, the

Sale Order does not bar the Wisconsin Actions and the Wisconsin Dealers are entitled to the

effect of the Sale Order.

**2. Wisconsin State Claims Do Not Fall Within "claims" as Defined in § 101(5)**

The Sale Order approved the sale of Old Chrysler's assets free and clear of all "Claims" pursuant to § 363(f). Sale Order at ¶ W, 17. In turn, the Sale Order described "Claims," as follows:

> pursuant to sections 105, 363 and 365 of the Bankruptcy Code . . . (ii) authorizing and approving the sale by the Debtors of the Purchased Assets, free and clear of liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), liabilities, encumbrances, rights, remedies, restrictions and interests and encumbrances of any kind or nature whatsoever whether arising before or after the Petition Date, whether at law or in equity, including all claims or rights based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Purchased Assets to the Purchaser or to be excused from accepting performance by the Purchaser or performing for the benefit of the Purchaser under any Assumed Agreement and all rights at law or in equity (collectively, "Claims").

Sale Order at 2–3 (emphasis added). The term "Claims," as described in the Sale Order, includes "claims (as such term is defined by section 101(5) of the Bankruptcy Code)." Id. The term "Claims" in the Sale Order makes it clear, however, that "Claims" do not encompass any "claims" other than those that meet the definition in § 101(5). To read the Sale Order any differently would render superfluous the qualifier, "as such term is defined by section 101(5) of the Bankruptcy Code." Indeed, the reference to "including all claims or rights based on any successor or transferee liability" itself shows that successor liability is a "claim" that must meet § 101(5) as indicated by use of the words "including" and "claims." Because the definition of "Claims" explicitly encompasses only those "claims" that are "defined by section 101(5)," the Sale Order does not bar any "claims" that fall outside of § 101(5).

The bankruptcy court identified the Wisconsin Dealer's state law claims as "claims" throughout the Enforcement Order. See, e.g., Enforcement Order at 6 (holding that state law claims "are essentially successor/transferee liability *claims*" and that "the Sale Order bars assertion of *claims*") (emphasis added). Because the state law claims in the Wisconsin Actions do not meet the definition of "claims" under § 101(5), they were not sold free and clear and do not fall within the Sale Order.

Section 101(5) of the bankruptcy code defines a "claim" as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5). The most obvious reason that the Wisconsin state law claims do not fall under § 101(5) is that the definition of "claim" in § 101(5) contemplates claims against the debtor, not claims that can be brought only against a non-debtor third-party. In re Chateaugay Corp., 944 F.2d 997, 1003 (2d Cir. 1991) (noting that Congress intended that "the bill contemplates that *all legal obligations of the debtor*, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case") (citation omitted; emphasis added). In Chateaugay, the Second Circuit noted that "it has been persuasively argued that a 'claim' should be deemed to exist whenever, in the absence of bankruptcy, a particular claimant has the *right to reach the debtor's assets*." Id. (emphasis added); see also Worldcom v. MCI, 546 F.3d 211, 220 (2d Cir. 2008).

Moreover, the definition of a "claim" under § 101(5) "is not infinite" but rather "'the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right

to payment, and (2) whether that right arose before the filing of the petition.'" Pension Benefits Guar. v. Oneida, 562 F.3d 154, 156 (2d Cir. 2009) (quoting LTV Steel Co. v. Shalala, 53 F.3d 478, 497 (2d Cir. 1995)).  "To make these determinations, we look to the substantive non-bankruptcy law that gives rise to the debtor's obligation." Id. (citing Travelers Cas. & Sur. Co. v. Pacific Gas & Elec. Co., 549 U.S. 443, 450 (2007) ("creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation")).

The state law claims in the Wisconsin actions did not exist until *after* New Chrysler purchased the assets of Old Chrysler, New Chrysler became licensed in Wisconsin and New Chrysler failed to continue the franchises.  As such, the right did not exist before the filing of the petition, as required in Pension Benefits, 562 F.3d at 156; see also Chateaugay, 944 F.2d at 1003 ("a 'claim' should be deemed to exist whenever, in the absence of bankruptcy, a particular claimant has the right to reach the debtor's assets").  More importantly, the state law claims at issue are not based on any legal obligations of Old Chrysler, but rather a statutory obligation of New Chrysler to continue the franchises as triggered by New Chrysler's application and receipt of a Wisconsin manufacturer and distributor's license. Wis. Stat. § 218.0114(2m).  In other words, even in the absence of bankruptcy, the Wisconsin Dealers could not reach the assets of Old Chrysler to satisfy claims arising from New Chrysler's refusal to honor its state statutory obligations. Wis. Stat. § 218.0116(1)(i)2.

The equitable claims for injunctive relief asserted by the Wisconsin Dealers against New Chrysler also fall well outside the definition of "claim" under § 101(5)(B).  To illustrate, the Second Circuit distinguished between an injunction that ordered a party to remove accumulated waste from one that ordered a party to end further pollution from such

waste. <u>Chateaugay</u>, 944 F.2d at 1008. According to the Second Circuit, an order to remove the waste would be a "claim" under § 101(5)(B) if the creditor obtaining the order had the option to remove the waste itself and sue for costs and, as a result, convert the injunction into a monetary obligation. <u>Id.</u> On the flip-side, an order enjoining further pollution would not be a "claim" because the creditor had "no option to accept payment in lieu of continued pollution" and, thus, the injunction did not give rise to a right of payment. <u>Id.</u>; <u>see also</u> <u>In re Udell</u>, 18 F.3d 403, 408 (7th Cir. 1994) (right to equitable remedy is not a "claim" within § 101(5)(B) if it does not give rise to a right to payment "with respect to" the equitable remedy).

The Wisconsin law at issue, Wis. Stat. § 218.0116(1)(i)2, statutorily obligates New Chrysler to continue the franchises in full force and operation, and other provisions of the Wisconsin MVDL entitle the Wisconsin Dealers to an automatic injunction against canceling or discontinuing the franchises unless those franchises were canceled or discontinued in accordance with state law. <u>See</u> Wis. Stat. § 218.0114(7)(d) and § 218.0116(10). However, these provisions do *not* give the Wisconsin dealers the option of converting an order enjoining New Chrysler to continue their franchises into a monetary obligation. <u>Id.</u> Because the equitable claims in the Wisconsin actions cannot be satisfied by a money judgment, they are not "claims" under § 101(5)(B).

In sum, the Sale Order expressly limited "claims" to only those that meet § 101(5), nevertheless the bankruptcy court went beyond the terms of the Sale Order by allowing "claims" to be sold free and clear (such as so-called "successor/transferee liability claims") that do not meet the definition of a "claim" under § 101(5). <u>See</u> Enforcement Order at 5 ("Dealers are erroneous in arguing that the Sale Order bars assertion of *claims* against New

Chrysler only if they fall within the definition of a *claim* under section 101(f) of the Bankruptcy Code") (emphasis added).   The Sale Order defined "claims" as meeting § 101(5).  As such, the Wisconsin Dealers are entitled to the effect of the Sale Order as written, which means that the only claims that passed free and clear are those that meet the definition of § 101(5).  Because the state law claims at issue in the Wisconsin Actions are not "claims" as that term is defined under § 101(5), the Sale Order does not bar the Wisconsin Dealers from pursuing those state law claims against New Chrysler.

### 3.  No Successor Liability Exists (As No Claim Existed Against Old Chrysler)

The bankruptcy court held in its Enforcement Order that the state law claims asserted by the Wisconsin Dealers against New Chrysler were "successor/transferee liability claims" that are barred by both the Sale Order and Rejection Order.  See, e.g., Enforcement Order at 4, 6 and 8 ("The Sale Order enjoined Dealers from pursuing any successor/transferee liabilities against New Chrysler"; "the Wisconsin Civil Action and the Wisconsin Administrative Action are essentially successor/transferee liability claims"; "Rejection Order ended the Dealers' right to act as authorized dealers while [the state statutes] resurrect precisely those rights and compel New Chrysler, the successor/transferee of Debtors, to resume the dealer agreements").[1]

However, the state law claims asserted against New Chrysler are not successor liability claims as the Wisconsin Dealers could never have asserted these claims against Old Chrysler. The claims arose as a statutory obligation against New Chrysler triggered by its licensing in

---

[1] There is no separate concept of transferee liability under bankruptcy law and the bankruptcy court treated these two terms synonymously.  Transferee liability is a tax concept under which the transferee of property may be held liable for the transferor's tax liability.  See 26 U.S.C. § 6901; DeWest Realty Corp. v. IRS, 418 F. Supp. 1274, 1280 (S.D.N.Y 1976).  For transferee liability to apply, the liability must have originated as a liability of the transferor that could have been enforced originally against the transferor.

Wisconsin. Wis. Stat. § 218.0116(1)(i)2. In fact, to this day, the Wisconsin Dealers still could not assert these state law claims against Old Chrysler because they relate solely to New Chrysler's statutory failure to continue the dealer franchises. Wis. Stat. § 218.0116(1)(i)2. Under this particular Wisconsin statute, a cause of action can be maintained only against the *new* entity (i.e., New Chrysler) because the provision requires the *new* entity to continue the dealer's franchise. Id. Simply put, no claim ever existed against the Old Chrysler under this statutory provision.

Without a predecessor claim against Old Chrysler, successor liability is impossible as a matter of law. "[A] plaintiff alleging successor liability does not allege that the purchaser of the assets did, or failed to do, anything that contributed to his injury" but rather "liability depends on the relationship between the defendant and the bankrupt." R.C.M. Executive Gallery Corp. v. Rols Capital Co., 901 F. Supp. 630, 636 (S.D.N.Y. 1995) (Koeltl, J.) (internal citation omitted). In other words, a prerequisite to successor liability is that liability exist against the predecessor. Id. ("the blameworthy behavior or status of the primarily liable person must be established as a prerequisite to recovery against the secondarily liable person.") (internal citation omitted); see also Black's Law Dictionary 1431 (6th ed. 1990) (defining a "successor" as "[o]ne that succeeds or follows"). Because no liability existed against Old Chrysler, the claim against New Chrysler is not, by definition, successor liability.

The present situation stands in stark contrast to a tort plaintiff or any other party that had a claim against an old entity, which then becomes successor liability against the new entity. The liability against New Chrysler arose only when it became licensed in Wisconsin and then failed to continue the franchises. New Chrysler's liability is a statutory obligation

triggered by its request for a license in Wisconsin.  As such, it is an independent liability, not a successor liability  The doctrine of successor liability is simply not in play given the facts and nature of the statutes at issue.

## C.  Rejection Order Does Not Bar Wisconsin Actions Against New Chrysler

The bankruptcy court held under the Rejection Order (Bankr. dkt. #3802) that successor liability as well as federal preemption prevented the Wisconsin Dealers from asserting their Wisconsin state law claims against New Chrysler LLC.  See Enforcement Order at 7-9.  In doing so, the bankruptcy court concluded that the Wisconsin Actions against New Chrysler were in "direct conflict with the terms of the Rejection Order" because the Rejection Order "ended the Dealers' right to act as authorized dealers while [the state franchise statutes] resurrect precisely those rights and compel New Chrysler, the successor/transferee of Debtors, to resume the dealer agreements." Enforcement Order at 8.

The Rejection Order provided that "as a result of the rejection of the Rejected Dealer Agreements, each Affected Dealer shall have no further rights (direct, indirect, contractual or otherwise) to act as an Authorized Dealer *of the Debtors.*"  Rejection Order at 5 (emphasis added).  By its express terms, the Rejection Order reached only "the Debtors" (i.e., Old Chrysler).  Moreover, it is critical to understand that *rejection* of an agreement under bankruptcy law is not the same as *termination* of the agreement.  The bankruptcy court itself noted this basic bankruptcy principle in its Rejection Opinion.  See Bankr. dkt. #3802, at 41 (noting that "rejection is not termination" and quoting 2 Norton Bankr. L. & Prac. 3d § 46:23 ("Rejection of a contract or unexpired lease, while constituting a breach of contract, does not terminate the contract or lease.")); see also In re Lavigne, 114 F.3d 379, 386-87 (2d Cir. 1997) (While rejection is treated as a breach, it does not completely terminate the

contract. . . . Rejection is not the power to release, revoke, repudiate, void, avoid, cancel or terminate, or even to breach, contract obligations."); In re Stoltz, 315 F.3d 80, 85 n.1 (2d Cir. 2002) ("Rejection, however, is not the same as termination."); In re Yasin, 179 B.R. 43, 50 (Bankr. S.D.N.Y. 1995) (same); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 687, 708 (Bankr. S.D.N.Y. 1992) (same).

The Second Circuit has held that a rejected agreement "is treated as if the debtor breached it immediately prior to the petition date, 11 U.S.C. § 365(g), *and the parties are generally left with the rights and remedies available outside of bankruptcy law.*" In re Stoltz, 315 F.3d at 85 n.1 (emphasis added); see also In re Sterling Optical Corp., 371 B.R. 680, 692 (Bankr. S.D.N.Y. 2007) (same). As is well established, the bankruptcy code does not determine the parties' rights regarding the rejected contract, but rather those are determined under state law. In re Lavigne, 114 F.3d at 387; In re Stoltz, 315 F.3d at 85 n.1. Therefore, the question that remains is what state rights and remedies are available against the new entity under Wis. Stat. § 218.0116(1)(i)2 given that the old entity breached its agreement by virtue of the Rejection Order. To that end, the bankruptcy court never looked to state law to determine the rights and remedies that exist outside of bankruptcy law as to the breach in light of this Wisconsin statute. Instead, it effectively terminated the rejected agreements, which is improper.

According to the bankruptcy court, "[t]he Rejection Order ended the Dealers' right to act as authorized dealers while the [state statutes] resurrect precisely those rights and compel New Chrysler, the successor/transferee of Debtors, to resume the dealer agreements." Enforcement Order at 8; see also id. at 7 (Rejection Order ended dealers' rights "to act as an Authorized Dealer . . . .") (ellipsis in original). However, the Rejection Order was more

narrow and explicitly ended the dealer's rights "to act as an Authorized Dealer *of the Debtors.*" Rejection Order, Bankr. dkt. #3802, at 5 (emphasis added). As a result, the Wisconsin statute did not "resurrect" the rights to act as an authorized dealer for Old Chrysler because the Wisconsin statute pertains *only* to New Chrysler. Nothing has been resurrected.

To the extent that any doubt exists as to the more narrow scope of the Rejection Order, the following language proposed by Old Chrysler — but not included by the bankruptcy court — should put those doubts to rest:

> Pursuant to sections 105 and 365 of the Bankruptcy Code, as a result of the rejection of the Rejected Dealer Agreements, each Affected Dealer shall have no further rights (direct, indirect, contractual or otherwise) to act as an Authorized Dealer of the Debtors *(or any purchaser of the Debtors' businesses) with respect to the dealership locations covered by the Rejected Dealer Agreements, and each Affected Dealer's status as an Authorized Dealer of the Debtors with respect to these locations is hereby deemed to be revoked, annulled and cancelled for all purposes.* As such, immediately as of the entry of this Order, each such Affected Dealer is no longer authorized, *appointed or permitted (contractually or otherwise) to*, among other things:
>
> (a) undertake any advertising sales, repair or service of any of the Debtor's Products under the terms of the Rejected Dealer Agreement;
>
> (b) hold itself out to any third party as an Authorized Dealer of the Debtors *(or any purchaser of the Debtors' businesses)* for any purpose;
>
> (c) display, distribute or otherwise use any signage, promotional or other materials bearing or containing the Debtors' trademarks and servicemarks, including, without limitation, company and vehicle make and model names and logos; and
>
> *(d) exercise or enforce any other rights, entitlements, privileges or status arising from or related to the Rejected Dealer Agreements or having been an Authorized Dealer of the Debtors, including any rights under the Dealer Laws, other than through the assertion of Rejection Damages Claims in this Court.*

Omnibus Motion of Debtors, Bankr. dkt. #780, at Exh. E (proposed language in italics).

As is evident, the italicized language would have encompassed New Chrysler, but the bankruptcy court did not include this language in the Rejection Order. Rejection Order at 5. Given this proposed language and the resulting order that failed to include this proposed language, there can be no doubt that the Wisconsin state law claims asserted against New Chrysler fall well outside the scope of the Rejection Order. Indeed, if the bankruptcy court wanted to expand the scope of the Rejection Order to encompass New Chrysler, this would have been the time to do so. Because the bankruptcy court omitted this proposed language, the Wisconsin Dealers had no need to appeal the Rejection Order to preserve their rights to bring a state action if New Chrysler failed to continue the dealer franchises as required under Wisconsin law. <u>Cf.</u> Enforcement Order at 7 ("The Dealers did not appeal the Rejection Order and did not take any action after the Rejection Opinion was issued.").

As to the bankruptcy court's preemption conclusion, the Wisconsin statute at issue does not conflict with the Rejection Order as one has nothing to do with the other. Specifically, the Wisconsin state law claims only pertain to New Chrysler's obligations to the Wisconsin Dealers as a result of obtaining a license in the state of Wisconsin. In contrast, the Rejection Order only pertains to Old Chrysler's (and only Old Chrysler's) obligations to the Wisconsin Dealers as a result of the Rejected Dealer Agreements. The Rejection Order stands unaffected by the Wisconsin statutes because the Wisconsin Dealers have not asserted any rights or claims against Old Chrysler, nor could they.

Moreover, it is unclear in what way the bankruptcy court believes that the bankruptcy code preempts Wis. Stat. § 218.0116(1)(i)2 because it never provided any preemption rationale or analysis. Instead, the bankruptcy court based its preemption conclusion on its assumption that the rights extinguished by the Rejection Order were somehow "resurrected"

by the Wisconsin state law claims by virtue of successor liability.  Enforcement Order at 8.  However, as discussed earlier, successor liability does not exist in this case because the Wisconsin Dealers could never have asserted these claims against Old Chrysler.  Again, without a claim against the predecessor, successor liability does not exist as a matter of law.

In any event, bankruptcy law is well established in that rejection of an agreement triggers only a breach of that agreement and that state law then applies to determine the rights of the parties after that breach.  In re Lavigne, 114 F.3d at 387; In re Stoltz, 315 F.3d at 85 n.1.  Therefore, it is an error for a bankruptcy court to preempt the state laws that define the debtor's rights, much less to preempt those laws that define the *non-debtor's* rights as was done in this case.  See, e.g., In re Friarton Estates Corp., 65 B.R. 586, 593-94 (Bankr. S.D.N.Y 1986) (refusing to allow § 365 to interfere with proper application of New York City rent control laws).

In sum, as with the Sale Order, the bankruptcy court went beyond the terms of the Rejection Order when issuing its Enforcement Order.  As such, the bankruptcy court lacked jurisdiction to issue the Enforcement Order.  As the Supreme Court has held in the bankruptcy context, "where the plain terms of a court order unambiguously apply, as they do here, they are entitled to their effect."  Travelers, 129 S.Ct. at 2204.  Because the state law claims asserted against New Chrysler in the Wisconsin Actions do not conflict with the Rejection Order, the bankruptcy court erred as a matter of law when it concluded that successor liability and preemption barred the state law claims asserted against New Chrysler.


**D.   If Orders Construed to Bar Wisconsin Actions, Due Process Would Be Violated**

Construing the Sale Order or the Rejection Order to bar the Wisconsin Actions would violate both substantive and procedural due process.  Due process requires notice "of such

nature as reasonably to convey the required information." Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 314 (1950); Bank of Marin v. England, 385 U.S. 99, 102 (1966) (applying this standard in the bankruptcy context). Accordingly, if the Sale Order were to enjoin the Wisconsin Actions, to satisfy due process, it would have had to provide the Wisconsin Dealers with "notice that specified the treatment of their class of claim, and allowed them to make an informed judgment" regarding the Sale Order. In re Barton Industries, Inc., 104 F.3d 1241, 1245 (10th Cir. 1997); see also Fogel v. Zell, 221 F.3d 955, 962–63 (7th Cir. 2000); Folger Adam Security, Inc. v. Dematteis/MacGregor, JV, 209 F.3d 252, 265 (3d Cir. 2000); In re Alvie Stanley Linkous, 990 F.2d 160, 163–64 (4th Cir. 1993); In re Auto-Train Corp., 810 F.2d 270, 279 (D.C. Cir. 1987). However, the Sale Order did not meet this due process requirement.

Instead, the terms of the Sale Order made it clear that the Sale Order did not serve to enjoin the Wisconsin Actions. As discussed, the Sale Order expressly adhered to the metes and bounds of § 363 of the bankruptcy code, which does not permit a sale "free and clear" of the Wisconsin Actions. Therefore, instead of providing the Wisconsin Dealers with notice that it was enjoining actions such as the Wisconsin Actions, the Sale Order only provided the Wisconsin Dealers with notice that it was *not* enjoining actions such as the Wisconsin Actions. For this reason, the Sale Order does not meet the due process standard for notice that it would serve to enjoin the Wisconsin Actions.

Similarly, the Rejection Order does not satisfy substantive and procedural due process in providing notice that it served to enjoin actions such as the Wisconsin Actions. As discussed, the plain language of the Rejection Order limits its preemption of dealer

claims to claims against Old Chrysler; it does not enjoin claims against New Chrysler.  As such, the Rejection Order does not provide sufficient notice to enjoin the Wisconsin Actions.

Because the Sale Order and the Rejection Order failed to provide the notice required under principles of due process, they cannot serve to enjoin the Wisconsin Actions. Consequently, the bankruptcy court could not issue an Enforcement Order that broadened the terms of the Sale Order and broadened the terms of the Rejection Order in order to bar the Wisconsin Actions.

## CONCLUSION

The Wisconsin Dealers respectfully request that the district court hold that the bankruptcy court lacked subject matter jurisdiction to enter its Enforcement Order and vacate the Enforcement Order as it improperly barred the Wisconsin Dealers from pursuing their state law claims against New Chrysler in the Wisconsin actions.

Dated this 9th day of November, 2009.

Respectfully submitted,

*/s/ Paul R. Norman*
Paul R. Norman (pro hac vice pending)
BOARDMAN, SUHR, CURRY & FIELD LLP
One South Pinckney St., 4th Floor
P. O. Box 927
Madison, WI 53701-0927
Tel:  (608) 257-9521
Fax: (608) 283-1709

*Attorneys for Boucher Imports, Inc., Braeger*
*Chrysler Jeep, Inc., Chilson, Inc., Quaden Motors,*
*Inc., Johnson Motors of St. Croix Falls, Inc.,*
*Lakeland Pontiac-GMC-Jeep, Inc., Mueller*
*Chrysler, Inc., and Wolf's Motor Car Company,*
*Inc. ("Wisconsin Dealers")*

*/s/ Russell P. McRory*_____
Russell P. McRory
ROBINSON BROG LEINWAND
  GREENE GENOVESE & GLUCK, P.C.
1345 Avenue of the Americas
New York, New York 10105
Tel: (212) 603-6300
Fax: (212) 956-2164

*Special Counsel to Boardman, Suhr Curry & Field LLP*

F:\DOCS\WD\50002\1\A0918934.DOC

26

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2009, I electronically filed the foregoing

Appellant Wisconsin Dealers Brief in Support of Their Appeal of the Bankruptcy Court's

Enforcement Order with the Clerk of Court using the CM/ECF system, which will send

notification electronically to all attorneys of record.

In addition, a courtesy copy was also hand-delivered this same day to The

Honorable Colleen McMahon, United States District Court for the Southern District of

New York, 500 Pearl Street, New York, New York, 10007.

*/s/ Russell P. McRory*
Russell P. McRory
ROBINSON BROG LEINWAND
   GREENE GENOVESE & GLUCK, P.C.
1345 Avenue of the Americas
New York, New York 10105
Tel: (212) 603-6300
Fax: (212) 956-2164

*Special Counsel to Boardman, Suhr Curry & Field LLP*

27